KITTY, The (UNITED STATES v.). See Case No. 15,537.

KITTY SIMPSON. The (BRAGDON v.). See Case No. 1,798.

---

## Case No. 7,861.

In re KITZINGER et al.

[19 N. B. R. 152.][1]

District Court. S. D. New York. May 7, 1879.

BANKRUPTCY—PROOF OF DEBT — JOINT JUDGMENT AGAINST PRINCIPAL AND SURETY—USURY.

1. A debt may be proved in bankruptcy against the estate of the principal debtors, notwithstanding a joint judgment has been recovered therefor against the principal debtors and the surety.

---

[1] [Reprinted by permission.]

2. The relation of principal and surety is not destroyed by the judgment.

3. The defense of usury is a personal defense, and a failure on the part of the bankrupts to avail themselves of it is not a fraud on creditors. Such defense is not open to the assignee.

[In the matter of Henry Kitzinger and Moritz Kitzinger, bankrupts.]

F. N. Bangs, for bankrupts.
E. P. Wheeler, for trustee.

CHOATE, District Judge. This is an application for the re-examination of a proof of debt made by one Goldman against the joint estate of the bankrupts. The case involves the determination of the question whether the claimant is entitled to prove against the joint estate or only against the separate estate of the bankrupts, and also the question whether the defense of usury is available against him. The bankruptcy proceedings were commenced against the two bankrupts above named and one Schlesinger, as copartners composing the firm of Kitzinger Brothers. The date of the commencement of the proceedings in bankruptcy must be taken to be in accordance with an order of the court herein Feby. 8, 1878. In this proceeding Schlesinger denied that he was a partner in the firm. or liable to be adjudicated as such, and after a trial of the question the court has so held, and the petition as to him has been dismissed and an adjudication made against the other two, as composing the firm of Kitzinger Brothers. Prior to the filing of the petition. Goldman, who had loaned money to the firm, and held therefor the firm notes, which were dishonored at maturity, sued the three on said notes to recover four judgments against them jointly. Goldman now offers to prove his debt against these two bankrupts jointly, setting forth in his proof of debt the judgments and the facts as to the loans to the firm, the giving of the notes and the representations to him, and his belief that Schlesinger was a partner. The trustee objects to this proof of debt on the following grounds: (1) That the decree in this proceeding adjudging that Schlesinger was not a partner, and that these two bankrupts alone composed the firm, is conclusive on all the parties to the record, including all the creditors: (2) that the claimant cannot go behind the judgments for the purpose of showing that the loan was actually made to these two bankrupts. and not to them with Schlesinger, as alleged in the complaints. and that the notes have become merged in and extinguished by the judgments, and cannot be made the basis of a proof of debt; and (3) that if the claimant is at liberty to go behind the judgments the trustee can establish any defense to the notes which the debtors could set up and that the notes were void for usury. There is no doubt that the question what persons composed the firm of Kitzinger Brothers was directly involved in the issue tried in this proceeding, and that the determination of the same, being a question which the court had jurisdiction to try, is binding and conclusive until reversed on all the creditors. In re Griffith [Case No. 5,820].

One of the questions in this case is whether a joint judgment against the three is in itself a bar to showing that the debt on which it is recovered is the debt of two as principal obligors and the debt of Schlesinger as surety for them; in other words, whether a judgment against the two bankrupts Schlesinger jointly is an absolute merger of the prior obligation. So that while before the two bankrupts were bound as principals and Schlesinger as surety only, yet after judgment and for the purpose of proving in bankruptcy the debt must be conclusively held to be simply the joint obligation of the three. On the one hand it is not contested that if Schlesinger was not a partner in fact, but only held out to Goldman as a partner, so that he could elect to join him in a suit as a joint obligor, the debt would be aside from the question of usury, and but for the judgment a firm obligation provable against the joint estate; and on the other side it is conceded that if the case is simply one of a joint obligation of the three it must be proved against the separate estates of the bankrupts, and as such will be entitled to share only in the surplus of the firm estate after the joint debts have been paid in full. Reserving for the present the question whether there is anything in the particular form of Goldman's complaint in his actions on which the judgments were recovered which operates as an estoppel by recital in pleading, I think it is clear that the mere fact of the recovery of a joint judgment against the principal debtors and the surety for the debt does not so destroy the relation of principal and surety, or work such a merger of the prior debt that it cannot be shown for the purpose of proving debts in bankruptcy that the obligation was the real debt of two of the judgment debtors as principals and of the other as surety.

The case of Bangs v. Strong. 4 N. Y. 319. contains a strong expression of opinion that the relation of principal and surety remains so far intact, even after a joint judgment against them, that the surety is released if time is given to the principal, even after such judgment. It is true that this point seems to have been involved in rulings at an earlier stage of the case, and the decision then made was held to be conclusive on the party, but that particular point whether the surety is so discharged after judgment is of no consequence in this case, for that decision, as well as those cited by the learned counsel for the trustee as conflicting with it on this particular point of the effect of the indulgence given to the principal after judgment against the surety, all recognize as unquestionable that the relation of principal and surety as between themselves is not extinguishable by the judgment, but continues. These cases all assume that after such a joint judgment the surety may still pay the debt and recover the amounts so paid of the principal his co-judg-

ment debtor. Any other rule would of course be grossly unjust. What is said in the cases, therefore, about the surety becoming by the judgment a "principal debtor" is not said with reference to his relations to his principal, but means merely that as to his judgment creditor he becomes absolutely bound, like any other judgment debtor. This is evidently the meaning of the expression as used in Lenox v. Prout, 3 Wheat. [16 U. S.] 520. This is also all that is meant by Chancellor Kent by the same expression in Bay v. Tallmadge (5 Johns. Ch. 312) and by the court in Findlay's Ex'rs v. Bank of U. S. [Case No. 4.791]. In all these cases the point was not whether, after a joint judgment, all the rights of the surety are extinguished by a rigid application of the technical doctrine of merger, but whether, after a judgment against the surety, be it a joint or a several judgment, his rights as against the creditor are not to some extent impaired, and they hold that as to him the obligation had become absolute, and no longer conditional on a certain rule of diligence. These courts held, as in Pole v. Ford, 2 Chit. 125, "that the rule that giving indulgence to an acceptor (principal debtor) without the consent of the drawer (surety) discharges such drawer does not apply after judgment." The case of Bangs v. Strong seems to rule this point otherwise for the state of New York, but whether it does or does not is immaterial, since all the cases hold that the rights and remedies of the surety as against his principal are unimpaired after judgment. Therefore, waiving now the question of the form of the complaints, there can be no doubt that on the facts shown relative to the origin of this debt as against Schlesinger, he was holder merely, because he had held out as a partner, and that the debt was in reality the debt of the two bankrupts, and that he could on payment of the judgment recover the same of the bankrupts, or could now make proof as for a contingent debt under section 5068. If, then, as between principal and surety, a judgment against them does not operate as a merger, there is no reason why, as between the creditor and the principal, it should in equity be held to have such an effect. There is no reason why the equity of the surety should not be worked out through proof in this case by the creditor against the principal, since it is but doing directly what the surety can do indirectly. In many respects the rules of administering bankrupt estate and marshalling assets are affected by the fact that parties bear to each other the relation of principal and surety. Thus it is the rule in England that a joint obligation, partnership or otherwise, cannot be proved against the separate estate of one of the co-contractors in bankruptcy, unless there be no solvent co-contractor; but it is otherwise where the bankrupt is the principal debtor and the other is a surety. In such case proof can be made though the surety is solvent, and this upon the uniform ground of justice that the debt is the real debt of the bankrupt. Ex parte Field, 7 Jur. pt. 1, 382; Ex parte Buckingham, 4 Jur. 612; Ex parte Crosfield, 1 Deac. 405; Hoare v. Oriental Bank Corp., 2 App. Cas. 589. That courts of equity will inquire whatever may be the form of the obligation as to the real nature of the debt for the purpose of equitable distribution of a fund with the distribution of which they are charged, and that the protection of sureties is especially cared for, are well-settled principles, and have received many illustrations in adjudged cases. Berkshire Woolen Co. v. Juillard (N. Y. App.) [75 N. Y. 535]; Thompson v. Taylor, 72 N. Y. 32. Courts of bankruptcy are courts of equity, and must apply equitable rules. There is no sound reason why the equities of principal and surety after a joint judgment against them where a joint judgment is a remedy open to the creditor, and which the surety could in no way resist, should not be held unimpaired, after judgment as before, except so far as the absolute rights secured by law to a judgment creditor necessarily abridge them for his benefit; and this seems to be the equitable doctrine. Equity therefore must recognize and give effect in every other respect to the relation of suretyship and the resulting rights and remedies and must recognize the debt as the real debt of the principal and not of the surety. The only position adverse to this is that the original obligation is merged in the judgment, but this, as we have seen, is not so. There is in no sense, so far as the surety is concerned, an absolute merger. Nor does the rule allowing the creditor to prove work any injustice to other creditors. This creditor has, it is true, his judgment against the surety as a collateral security, but the other creditors clearly have no equity to compel him to resort to that. On the other hand, it is the equity of the surety to compel him to resort to the bankrupt principal in the first instance. For these reasons I think it is clear that the recovery of a judgment against the principal and surety jointly, where there is not in such recovery as by the recital in the pleadings an estoppel conclusive against the creditor as to the existence of the relation of principal surety, does not preclude the judgment creditor from proving his debt against the principal afterwards becoming bankrupt.

The question still remains, however, whether the creditor is in this case estopped by his pleadings. In one of the complaints he states his cause of action as a loan to Henry and Moritz Kitzinger and Louis Schlesinger. In the others he declares upon notes made by the firm of Kitzinger Brothers, alleging that the three persons named were partners in trade doing business under the firm name of Kitzinger Brothers, and that "said firm by its said firm name made its promissory note, &c." whereby said firm consisting of said defendants promised to pay, &c. It is evident from the complaint itself, and also from the

testimony, that the complaint was drawn under the impression and belief that Schlesinger was in fact a member of the firm. The particular point now under consideration was not in the mind of the pleader, or he ought, if he had anticipated this objection to his proof, have set out the facts that the two Kitzingers composed the firm; that they and Schlesinger represented to him and induced him to believe that the three composed the firm; that he loaned the money to the firm, and took the note of the firm, believing in the truth of the representations, and relying thereon. This, no doubt, under the New York Code, would be a good complaint; but, even if the pleader had known these facts, was he bound to set them forth in that way? On the contrary, would not his complaints as they are be a proper mode of stating those facts according to their legal effect? Notwithstanding all the modern changes in the rules of pleading, facts may, it is believed, still be pleaded according to their legal effect. Judged by this rule, it seems to me that an answer by Schlesinger to the complaints served, setting up the exact facts, would have been demurrable, and that the plaintiff would be entitled to recover on these complaints as they are on showing a joint liability by the application of the doctrine of estoppel,—that is, by proof of the actual facts,—and could well prove his case without showing the existence of the partnership relation in fact between Schlesinger and the other defendants on proof that Schlesinger was held out as a partner under circumstances estopping him to deny the partnership as against Goldman. If the actual existence of the partnership relation need not have been proved, but only such facts as would estop the defendants, including Schlesinger, from denying the joint obligation as of partners, then it seems to me that the averment of the actual existence of the partnership relation is an immaterial averment not of the substance of the issue, and that the plaintiff is not by the recital thereof in his complaint estopped to show the contrary. A party cannot well be held estopped to show what he could have shown in proof of his pleading for that cannot be considered in law inconsistent with it. See 2 Smith, Lead. Cas. (7th Am. Ed.) 80. Estoppels by statements in a pleading do not arise except as to those matters which are necessarily alleged as the basis of the cause of action or the defense, and which, if put at issue, and proved or disproved, would be decisive of the action, and, a judgment passing on such matters, the estoppel is unusual, both parties being concluded. Boileau v. Rutlin, 2 Exch. 681; Havens v. Hartford & N. H. R. Co., 28 Conn. 69. There is no technical estoppel in this case. Nor are there elements of an equitable estoppel or estoppel in pais. Indeed this would be a most extraordinary and inequitable application of the doctrine of estoppel if it must be held applicable. All the parties in this proceeding, including this trustee, are estopped by the decree of the court herein from claiming that Schlesinger was in fact a partner. That decree was entered long after these judgments were entered, and after a long litigation, in which all these parties were engaged, to ascertain the truth in respect to this very question of fact. It was not at all inconsistent with this fact, so conclusively determined, that Schlesinger might be liable for this debt jointly with the bankrupts by way of surety, from his having been held out as a partner; and when he was sued jointly with them, and put in no defense, it is to be assumed from that very fact that he knew that he was jointly liable, and it was a matter of indifference to him whether the cause of action was described with technical accuracy in the complaint or not, as he put in no answer, and raised no issue of fact. The plaintiff cannot be estopped by the recitals of his complaint except as to such allegations as constitute an essential part of his alleged cause of action in this case. The essential part is the joint promise, and not the existence of the partnership relation. At the time these judgments were entered the creditors whom the trustee now represents in contesting this claim were strenuously contending that Schlesinger was a partner. In fact, if he was bound jointly to them with the bankrupts by estoppel, they have, or might have had, the benefit of such collateral security as well as this claimant. There is no merit in the objection which seeks to exclude him from the benefit of a security he is apparently entitled to, and which does not impair or affect their right against the bankrupt estate, upon merely technical grounds by reason of an unessential inaccuracy of the statement of his cause of action, which inaccuracy was itself caused by a misapprehension as to matter of fact or matter of law, under which they as well as he were then acting.

There being no estoppel, either technical or equitable, to prevent the creditor from showing that the partnership relation did not in fact exist, it is unnecessary to consider the effect the subsequent judgment in a proceeding between the same parties, and binding upon them both, whereby it was determined that the relation did not exist, would have had on such a prior estoppel by pleading and record if it had existed, or whether it would be a case where an estoppel against estoppel would have left the matter at large. The defense of usury in the notes on which the judgments were recovered is not open to the trustee. Doubtless, where the issue is whether the transfer of property before the bankruptcy was fraudulent as against creditors, that fact that judgments had been recovered against the bankrupt, and the title was made under such judgments, would not estop the assignee from inquiring whether those judgments were collusively obtained and fraudulent. Humes v. Scruggs, 94 U. S. 22. But here there is no such issue, nor any evidence that the actions were not carried on in

entire good faith, nor that the bankrupts, in failing to appear and answer, were not acting in equal good faith. The defense of usury is a personal defense. If in this case it could have been set up by the bankrupts, and they failed to set it up, having, as they then had, full power to avail themselves of it or not, which was a personal privilege, it seems to me that the assignee cannot reopen the question. A failure to take advantage of a possible defense of this character is certainly not in itself a fraud upon the creditors. It appears also to have been held in this very case by Judge Blatchford that the judgments were conclusive on the assignee as to the fact of indebtedness. The fact that the relation of the defendants to each other as principal and surety may be shown in order to give proper equitable relief does not open the judgments or make them less conclusive as evidences of indebtedness.

It is unnecessary to consider the other grounds urged on behalf of the bankrupts for sustaining the proof of their claim. Motion to expunge denied, with costs to be paid out of the estate.

[In Case No. 7,862 an order was made allowing the claimant interest upon his dividend. It was further held that he was entitled to full interest on the amount, and not the amount allowed while the sum was on deposit in a trust company pending an appeal. Case No. 7,863.]