HELEN S. BLISH ET AL., APPELLANTS, *v.* W. S. MC-CORNICK ET AL., RESPONDENTS.

REPLEVIN—DELIVERY—CONTINUED CHANGE OF POSSESSION—FRAUD —CONCLUSIONS OF LAW.

1. In an action of replevin for the recovery of 104 cattle described, a finding of fact by the court that the plaintiffs were not at any time the owners of the cattle sued for (describing them) is not inconsistent with another finding that defendants levied upon 102 head of cattle described, the two descriptions not being exactly the same.

2. In an action of replevin, where the issue is the ownership of personal property, plaintiffs cannot raise upon appeal the question of priorities between partnership creditors and individual creditors; the question not having been raised by the pleadings, nor in the trial.

3. Where plaintiffs, by their questions upon the trial, treated the defendant as a deputy United States marshal, and he alleged in his answer, and the record contains, process served and returned by said defendant as such deputy United States marshal, and the question is not raised on the trial of the case, a finding of fact that defendant is such officer will be treated upon appeal as sustained by the evidence.

4. What amounts to a delivery within a reasonable time, and an actual and continued change of possession, under section 2837 of the Compiled Laws of 1888, which provides that every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment of goods and chattels, unless the same be accompanied by a delivery within a reasonable time, and be followed by an actual and continued change of possession of the things sold or assigned, shall be conclusive evidence of fraud, as against creditors of the vendor or assignor, or subsequent purchasers in good faith, are generally facts which depend largely upon the kind and nature of the property, the situation of the parties, and the circumstances peculiar to each case.

5. When plaintiffs claim to own certain cattle by virtue of a bill of sale from the husbands, respectively, of two of them, and sons-in-law of the other, W. A. S. and E. S. S., co-partners, of all their cattle upon the ranges, the number and value of which cattle are unknown, the consideration of the sale being a credit of $1,500 by each of the three plaintiffs upon each of three certain promissory notes, which were renewed notes of others given six years before, with mortgage security, which was permitted to be sold without applying its proceeds upon the indebtedness, and there is testimony that said grantors did not actually deliver any of the cattle sold to the plaintiffs, and that the grantors, five days before the bill of sale to plaintiffs, bargained and sold to S. & T. all the three and four year old steers they could gather and deliver in fifteen days' time, and that, after the bill of sale of all their cattle to plaintiffs, said grantors conducted a drive or roundup with men engaged by

them, and delivered to S. & T., under said bargain and sale, over fifty steers, and received in checks the pay therefor in full, except the sum of $140 paid to one of the plaintiffs, and turned upon the range ninety more cattle gathered, without delivering same to plaintiffs or their agent, and making no change in the marks or brands upon the cattle, and doing nothing with the cattle to indicate that a change of possession or ownership had taken place, *held*, that a general finding of fact by the court that there was no delivery under the sale to plaintiffs will not be set aside as unsupported by the evidence.

6. Where a decree is entered in which it is recited that findings of fact and conclusions of law have been filed, and in the findings, after setting forth the facts under seven subdivisions, there is added the following: "Upon the conclusions of law and the foregoing facts, the court finds that the plaintiffs have no cause of action herein against the defendants, and the defendants are entitled to a judgment against the plaintiffs for the costs of this action, taxed at $————,"—*held*, that the same is sufficient as a conclusion of law.

(No. 772.   Decided July 23, 1897.)

Appeal from the Second district court, Territory of Utah.   Hon. G. W. Bartch, *Judge.*

Action of replevin by Helen I. Blish and others against W. S. McCornick and others.   From a judgment for defendants plaintiffs appeal.   *Affirmed.*

This is an action of replevin commenced March 16, 1895, in the district court of the Second judicial district of the territory of Utah, in Beaver county.   The complaint alleges the ownership in the plaintiffs of 104 head of cattle described, of the value of $2,000, and the unlawful conversion and detention of the same by the defendants, to the plaintiff's damage in the sum of $8,000.   The defendant McCornick filed a separate answer, denying the allegations of the complaint, and for further defense

alleged that in December, 1893, he was doing a general banking business, and loaned to W. A. and E. S. Sawyer $5,235.23, evidenced by their promissory note, upon the representation by them that they desired said money to buy cattle and live stock with which to replenish their herd of cattle ranging and grazing in Beaver county, Utah; that on the 14th day of January, 1895, a judgment was duly given and entered in favor of said McCornick on said note for $5,235.23 and interest, that an execution was duly issued to the defendant Nat M. Brigham, United States marshal within and for Utah territory, and was thereafter placed in the hands of defendant R. R. Tanner, the duly appointed, qualified, and acting deputy United States marshal in and for Utah territory, and that a levy was made in pursuance thereof upon certain cattle described, and alleged to be at the time of the levy the property of said W. A. and E. S. Sawyer, and purchased by them with the money so loaned them by defendant McCornick. An answer substantially the same was filed by the defendants Nat M. Brigham and R. R. Tanner. Plaintiff Inez V. Sawyer is the wife of E. S. Sawyer, plaintiff Blanch H. Sawyer is the wife of W. A. Sawyer, and plaintiff Helen S. Blish is the mother of Inez V. Sawyer and Blanch H. Sawyer. Plaintiffs claim to be the owners of the cattle sued for by virtue of an alleged sale and transfer from the said W. A. Sawyer and E. S. Sawyer, co-partners, on the 5th day of November, 1894, for the consideration of a credit of $1,500 on each of three promissory notes given by said Sawyer Bros. on September 19, 1893, to plaintiffs, in the following amounts: Helen S. Blish, $2,650; Blanch H. Sawyer, $9,554.60; and Inez V. Sawyer, $8,917.08,—all bearing interest at 6 per cent., and secured by mortgages of even date on all the cattle of Sawyer Bros., which

mortgages had expired by limitation before the levy upon the cattle by the defendants. The case was tried to the court, with findings for the defendants, and a judgment against the plaintiffs,—no cause of action. A motion for a new trial was made and overruled, and plaintiffs appeal from the judgment and order.

*J. D. Pardee* and *Presley Denny,* for appellants.

*C. O. Whittemore* and *H. C. Edwards,* for respondents.

HART, D. J. (after stating the facts):

Appellants urge as one of their objections to the decision that a fatal variance and contradiction exist between the first and sixth findings and between the second and part of the seventh findings of fact. The first finding is, substantially, that the plaintiffs were not at any time or at all the owners or entitled to the possession of the property mentioned and described in plaintiff's complaint, consisting of 1 two year old bull, 7 two year old steers, 11 cows, 4 calves, 1 yearling heifer, 76 three and four year old steers, 2 cows, and 2 three year old steers, all branded round-top A on right and left ribs and left hips. The part of the sixth finding material to be stated is that the defendant R. R. Tanner, under an execution on the McCornick judgment against W. A. and E. S. Sawyer, levied upon and took into his possession the following described property, to wit: 46 three year old steers, 39 two year old steers, 1 black bull, 12 cows, 4 calves, branded with round-top A on left ribs and same on left hip. It will be noticed that there is a difference both in the numbers and kinds of the animals enumerated and described in these findings. The last description corresponds with the cattle admitted by the answers to have been levied upon, except there

are sixteen more in the enumeration given in the answers. Plaintiffs are found never to have been the owners of the cattle sued for. The answers do not allege—neither does the court find—that the animals levied upon ever belonged to plaintiffs. Appellants urge that as the second finding is that the property described in the complaint was at the times mentioned the property of W. A. and E. S. Sawyer, partners doing business as Sawyer Bros., while the seventh finding is that the property levied upon was at the time in question the property of W. A. and E. S. Sawyer, the conclusion must be that the cattle sued for is a different herd from those levied upon,—the former being partnership property; the latter, individual property. If there were two distinct herds, it would not strengthen plaintiffs' case. It is immaterial, under the issues in this case and the facts found, whether the defendants levied upon all or no part of the cattle plaintiffs claim. It is sufficient either that the defendants did not take possession of any of the cattle sued for, or that the cattle taken by defendants did not belong to plaintiffs. Both findings, instead of being contradictory, simply make a stronger case against the plaintiffs.

Appellants seek to raise upon appeal the question of priorities between partnership creditors and individual creditors to partnership property. Of course, the well-established rule is that partnership creditors are entitled to payment out of partnership property in preference to creditors of the individuals composing the firm; in other words, that partnership assets are a trust fund for the payment of partnership debts, and that the rights of the partners and their personal creditors are subject to the rights of firm creditors. But this question is not raised by plaintiffs in their pleadings. They sue in

15 UTAH—13

replevin, and claim to own the property sued for. A trial is had upon this issue, and they are found not to be the owners. Then upon appeal they seek to raise the question that the defendants, who levied upon and sold property under an execution upon a judgment against the individuals composing the firm, are not entitled to the firm property as against the plaintiffs, who claim to be firm creditors. If this question had been raised in a proper way, under pleadings to this effect, defendants might have desired to allege and offer proof that their debt, while in name against the individuals, was in fact a firm debt incurred for the benefit of the firm, and the proceeds used by the firm. There is evidence in the record that the McCornick note and judgment was in reality a firm debt. *Tanner* v. *Jaycox*, 40 N. Y. 470; *Woolen Co.* v. *Juillard*, 75 N. Y. 540.

The plaintiffs object that there is no evidence to support the fifth finding, to the effect that the defendant R. R. Tanner was during the times mentioned a duly appointed, qualified, and acting deputy United States marshal for the territory of Utah. Plaintiffs by their questions during the trial treated the defendant as such deputy marshal, and the evidence contains the return of summons, and also certificate of sale of the property upon execution, in which he signed as said deputy marshal. The question was not raised by counsel in the trial of the case.

Exception is taken to nearly all the facts found, on the ground of the insufficiency of the evidence to support the same. This exception is taken to the finding that the claim of the plaintiffs to the stock described in their complaint "is based upon an attempted transfer of said stock by W. A. and E. S. Sawyer to said plaintiffs, but no delivery of said stock was made to said plaintiffs,

and no title to the said stock passed to plaintiffs under said attempted transfer, and the plaintiffs had no ownership or interest whatever in said cattle at the time they were levied upon by the defendant Tanner as aforesaid." We are not called upon in this case to say, as a matter of law, whether certain uncontroverted facts are sufficient to constitute a delivery and change of possession under section 2837 of the compiled Laws of Utah of 1888, which provides, in part, that "every sale made by a vendor of goods and chattels in his possession, or under his control, and every assignment of goods and chattels, unless the same shall be accompanied by a delivery within a reasonable time, and be followed by an actual and continued change of possession of the things sold or assigned, shall be conclusive evidence of fraud as against the creditors of the vendor, or assignor, or subsequent purchasers in good faith." What constitutes a delivery within a reasonable time, and an actual and continued change of possession, are generally facts which depend largely upon the kind and nature of the property, the situation of the parties, and the circumstances peculiar to each case. The particular facts as to the attempted sale, delivery, and possession are not made a part of the findings in this case. There is testimony that Sawyer Bros. procured the money represented by the McCornick judgment upon the representation that they desired to purchase young stock to replenish their herd as the older ones were sold from time to time, and that nothing was said by them at the time of giving the note to McCornick about their cattle being mortgaged to their wives and mother-in-law; that the mortgage of September 19, 1893, upon which the credits were given as consideration for the purchase price of the cattle, were renewal mortgages of others given by Sawyer Bros. to plaintiffs upon

cattle in Wyoming in 1887, which cattle Sawyer Bros. were permitted to dispose of without paying the mortgage debts; that on October 30, 1894, five days before the bill of sale was given to the plaintiffs, Sawyer Bros. bargained and sold to one Saunders & Tisdale what three and four year old steers they could gather and deliver by November 15, 1894; that at the time of the giving of the bill of sale to plaintiffs the stock purporting to be sold were running upon the range in Beaver county and vicinity, and it was not known how many cattle were owned by Sawyer Bros., and there was no delivery, unless one was made of cattle in unknown numbers scattered upon the ranges without the same being gathered; that Sawyer Bros., assisted by some men engaged by themselves, and one other man engaged by Mr. Pardee, attorney and agent of the plaintiffs, and a son of plaintiff Mrs. Blish, made a roundup of some 150 head of the Sawyer Bros.' cattle, and delivered over 50 head to Saunders & Tisdale, under the contract with them of October 30th; that Saunders & Tisdale paid in checks to Sawyer Bros. the purchase price of the steers, $1,015, less the sum of $140 paid to Blanch H. Sawyer; that the balance of the cattle gathered and not delivered to Saunders & Tisdale were turned into the Adamsville field, but no delivery of the same was made to plaintiffs or to Mr. Pardee, who was not present at the time. Neither were any changes made in the marks or brands of these cattle, nor anything done with or to the cattle to indicate that any change of possession or ownership had taken place. There is no fixed rule that will govern all cases as to what is necessary to constitute such a delivery and change of possession as is required by our statute. The particular facts and circumstances must govern each case. After a careful examination of

the whole record, we cannot say that there is not legal evidence to sustain the finding that there was no delivery under the attempted sale and transfer; and, further, we cannot say that any other finding material to the issues and judgment is not supported by legal evidence.

Appellants insist that there are no conclusions of law found by the court, and that, therefore, the judgment should be reversed. The closing paragraph of the findings, after setting forth the facts under seven subdivisions, is as follows: "Upon the conclusions of law and the foregoing facts, the court finds that the plaintiffs have no cause of action herein against the defendants, and the defendants are entitled to a judgment against the plaintiffs for the costs of this action, taxed at ——— dollars." Besides this, a formal decree was rendered in which it is recited that "the court having found and filed its findings of fact and conclusions of law, from which it appears," etc. The paragraph first above quoted was no doubt intended as conclusions of law, and whether we disregard, and consider as stricken out, the words, "the conclusions of law and," or read the paragraph as intended to read, "as conclusions of law from the foregoing facts, the court finds," etc., we think the same should be treated as a conclusion of law. *Jones* v. *Clark*, 42 Cal. 180; *Butler* v. *Beech*, 55 Cal. 28.

Numerous errors of law in the admission and rejection of testimony are assigned by appellants, but we fail to discover any error in the record. Some objections are made by respondents to the consideration of this appeal, but, as we hold that the judgment should be affirmed, it is not necessary to discuss other questions. The judgment of the trial court is affirmed.

ZANE, C. J., concurs.

MINER, J.: I concur in the judgment.